UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DOLINSKI, *et al,*                    Case No. 14-13273

    Plaintiffs,                    Sean F. Cox
v.                                          United States District Judge

JP MORGAN CHASE BANK,                       Michael Hluchaniuk
NATIONAL ASSOCIATION,                       United States Magistrate Judge

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Dkt. 5)**

**I. PROCEDURAL HISTORY**

  Plaintiffs David J. Dolinski and Yolanda M. Dolinski filed this mortgage

foreclosure case in Monroe County Circuit Court, and defendant JP Morgan Chase

Bank, N.A. removed it to this Court on August 22, 2014.  (Dkt. 1).  On September

26, 2014, defendant filed a motion to dismiss plaintiffs' complaint.  (Dkt. 5).  This

motion was referred on October 2, 2014.  (Dkt. 6).  On November 24, 2014,

plaintiffs filed their response to defendant's motion (Dkt. 10), and defendant filed

its reply brief in support of its motion to dismiss on December 8, 2014.  (Dkt. 11).

On December 11, 2014, the parties filed their Joint Statement of Resolved and

Unresolved Issues, indicating no resolved issues.  (Dkt. 12).  Pursuant to notice, a

hearing on defendant's motion to dismiss was held on December 17, 2014.  (Dkt.

1

8).

After hearing the parties' arguments, the matter was taken under advisement. For the reasons set forth below, the undersigned recommends that defendant's motion to dismiss be **GRANTED** and plaintiff's complaint be **DISMISSED**.

## II.   FACTUAL BACKGROUND

This case relates to real property located at 535 Godfroy Ave., Monroe, Michigan 48162 ("Property"). (Dkt. 1-2, Compl. ¶ 1). On September 7, 2005, plaintiff David J. Dolinski received a loan in the amount of $112,500.00 ("Loan") from Acc-U-Rate Mortgage Company Ltd. ("Lender"). (Dkt. 5, Ex. 1, Note). To secure repayment of the Loan, plaintiffs granted a mortgage ("Mortgage") on the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for Lender and Lender's successors and assigns. (Dkt. 5, Ex. 2, Mortgage). The Mortgage was recorded on September 29, 2004 in Liber 2592, Page 613, Monroe County Records. (*Id*.) MERS assigned the Mortgage to Chase on October 19, 2012, which assignment was recorded on November 5, 2012 as Instrument No. 2012R24963, Monroe County Records. (Dkt. 5, Ex. 3, "the Assignment").

Plaintiffs subsequently defaulted on their Loan obligations. Plaintiffs allege that in March 2013, they began the process of attempting to modify their

loan.  (Dkt, 1-2, Compl. ¶8).  Plaintiffs allege they met with Michigan State

Housing Counselor Pam Sarlito in March and April 2013.  (*Id.* ¶¶ 9-10).  She

advised that she was not optimistic plaintiffs would be approved for a loan

modification, and she gave them information to contact the Michigan's Hardest

Hit Program through the Michigan Homeowner Assistance Nonprofit Housing

Corporation to apply for funding to reinstate their mortgage loan (the "Program").

(*Id.* ¶ 9).  Plaintiffs also communicated several times with Beverly Hampton, a

liaison between Chase and plaintiffs, in April and May 2013, regarding the loan

modification process and documentation required.  (*Id.* ¶¶13-17, 21-24).  Plaintiffs

allege they submitted their application for Program funding on April 25, 2013.

(*Id.* ¶¶ 19-20).  Plaintiffs allege they received confirmation of Program financing

to reinstate their mortgage in August 2013, and that they sent additional requested

documents regarding that funding in September and October 2013.  (*Id.* ¶¶ 26-29).

On November 21, 2013, plaintiffs received a notice of foreclosure sale from

Chase.  (*Id.* ¶ 30).  Plaintiffs allege they repeatedly attempted to call the Program

to find out why they received the notice if they were approved for funding, and

contacted Chase's foreclosure counsel to find out the cost to reinstate the

mortgage, but foreclosure counsel advised plaintiffs to call Chase.  (*Id.* ¶¶ 31-32).

Plaintiffs allege that, upon request, they resubmitted their Program application on

December 12, 2013, and contacted Chase on December 13, 2013 to request a

postponement of the Sheriff's sale to allow for Program funding to go through, but that Chase did not return plaintiffs' phone call. (*Id.* ¶¶ 34-36). Plaintiffs also received a reinstatement quote from foreclosure counsel on December 19, 2013. (*Id.* ¶ 37). Plaintiffs were advised of a new Chase Customer Assistance Specialist, Herbert Zamora, on December 20, 2013, and spoke with Mr. Zamora on December 30, 2013 to request that the Sheriff's sale be postponed. (*Id.* ¶¶ 38, 40). Mr. Zamora advised plaintiffs that he did not see anything in his notes about Program funding. (*Id.* ¶ 40). Plaintiffs allege, however, that they spoke with a counselor with the Program on January 2, 2014, who said that she had spoken with a Chase representative. (*Id.* ¶ 41). Plaintiffs state that they received a phone call from Tammy at the Program on January 21, 2014, advising them that the Program received a letter from Chase advising that the Program funding had been denied because the Property had already been sold at Sheriff's sale. (*Id.* ¶ 42).

Plaintiffs do not allege that they were approved for a modification. Instead, plaintiffs allege that Chase would not accept funds provided by Michigan's Hardest Hit Program to reinstate their Loan in January 2014. (Dkt, 1-2, Compl. ¶¶41-42). However, the Property was already sold at Sheriff's Sale to Chase on January 2, 2014. (Dkt. 5, Ex. 4, Sheriff's Deed). The Sheriff's Deed was recorded on January 9, 2014 as Instrument No. 2014R00464, Monroe County Records. (*Id.*)

Chase then transferred its interest in the Property to non-party Fannie Mae a/k/a Federal National Mortgage Association. (Dkt. 5, Ex. 5, Quit Claim Deed). The Quit Claim Deed was recorded on February 12, 2014 as Instrument No. 2014R02407, Monroe County Register of Deeds. (*Id.*) Plaintiffs had until July 2, 2014 to redeem the Property. (Dkt, 5, Ex. 4, p. 9).  Plaintiffs did not redeem and the redemption period has now expired.

Plaintiffs subsequently filed their Complaint, alleging claims for: (1) fraudulent misrepresentation/silent fraud; (2) constructive fraud; (3) violation of Michigan's Regulation of Collection Practices Act (MRCPA); and (4) negligent administration of loan. Plaintiff seek both money damages and equitable relief in setting aside the foreclosure sale.  Defendant filed a motion to dismiss plaintiff's complaint, arguing that plaintiffs have failed to state a claim to set aside the foreclosure sale because they lack standing to challenge the foreclosure sale, they do not present a strong case of fraud or irregularity regarding the foreclosure process itself or establish prejudice suffered as a result, and their claims are barred by the statute of frauds.  Defendant further argues that plaintiffs cannot establish a violation of the MRCPA and that their claim regarding negligent administration of the loan fails as a matter of law.

III.   **ANALYSIS**

A.   **Plaintiffs' "Standing" to Challenge the Foreclosure Sale**

Chase argues that plaintiffs' challenges to the foreclosure sale should be rejected because plaintiffs lost all right, title and interest in the Property upon expiration of the redemption period, which divested them of standing under Michigan law to challenge the foreclosure. Under Michigan law, foreclosure by advertisement, such as the foreclosure at issue in this case, as well as the rights of both the mortgagor and mortgagee after the foreclosure sale has occurred, are governed by Michigan statutory law. *See Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying Michigan law); *see also Brewington v. Nationstar Mortg., LLC*, 2013 WL 4009160, at *5 (E.D. Mich. Aug. 5, 2013) ("The statute not only governs the process for foreclosure, but also the parties' rights subsequent to the sale of the property."). Pursuant to Michigan law, a mortgagor has six months from the date of the Sheriff's sale to redeem the property. MCL § 600.3204(8). If the mortgagor fails to redeem the property before the redemption period expires, the mortgagor's "rights, title, and interest in and to the property" are extinguished, *Piotrowski v. State Land Office Bd.*, 302 Mich. 179; 4 N.W.2d 514, 517 (1942), and the Sheriff's deed 'become[s] operative, and [ ] vest[s] in the grantee named therein . . . all the right, title, and interest [ ] the mortgagor had[.]" MCL § 600.3236. This rule of law–holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period–has been applied consistently by state and federal courts alike

6

to bar former owners from making any claims with respect to the foreclosed property after the statutory redemption period has lapsed. *See e.g., Conlin*, 714 F.3d at 359; *Piotrowski*, 302 Mich. at 187.

There is, however, one caveat to the general rule described above. Once a foreclosure sale has taken place and the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff makes "a clear showing of fraud, or irregularity[.]" *Conlin*, 714 F.3d at 359; *Freeman v. Wozniak*, 241 Mich. App. 633, 637; 617 N.W.2d 784 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citation omitted). However, "[i]t is clear that not just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Conlin*, 714 F.3d at 360 (quoting *El Seblani v. IndyMac Mortg. Servs.*, 510 Fed. Appx. 425, 429 (6th Cir. 2013)).

If a plaintiff seeking to set aside the sheriff's sale demonstrates fraud or irregularity in connection with the foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115; 825 N.W.2d 329 (2012). Therefore, in order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply" with Michigan's foreclosure by advertisement statute. *Id.* (holding that defects under MCL §600.3204 are only actionable on a showing of

prejudice).  "To demonstrate such prejudice, [plaintiffs] must show that they
would have been in a better position to preserve their interest in the property
absent defendant's noncompliance with the statute."  *Id.* at 115-16 (footnote
omitted).

Plaintiffs correctly assert that recent Sixth Circuit case law clarifies that the
lapse of the statutory redemption period does not implicate standing issues.  *See
Elsheick v. Select Portfolio Servicing, Inc.*, 566 Fed. Appx. 492 (6th Cir. 2014).
The Sixth Circuit explained that although cases may discuss "standing," such
cases "should not be read as Article III standing cases."  *Id* at 496.  Instead, after
analyzing the precedent of the Michigan State Courts, the Sixth Circuit
emphasized that in cases such as this one, where a plaintiff seeks "to challenge a
foreclosure sale despite failing to redeem the property within the applicable six-
month period . . . '[t]here is no serious dispute that [a plaintiff] has Article III
standing to contest the foreclosure sale.'"  *Id.* (quoting *El-Sablani v. IndyMac
Mortg. Servs.*, 510 Fed. Appx. 425, 428 (6th Cir. 2013), and citing *Friends of the
Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000), for
the proposition that standing is established when there is a "concrete","
"particularized," and "actual" injury that "is fairly traceable to the challenged
action of" the defendant and capable of being "redressed by a favorable
decision.").

8

Thus, plaintiffs' complaint here should not be dismissed solely because the case was brought after the end of the statutory redemption period. Nevertheless, "having standing to bring a claim does not mean [a plaintiff has] a valid claim on the merits. That is a different question." *Elsheick*, 566 Fed. Appx. at 497. Defendants correctly note that plaintiffs do not contest their default and did not redeem the Property during the six-month redemption period. Thus, as plaintiffs concede, the Court must assess whether plaintiffs' Complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above. *See Bodner v. Wells Fargo Bank, N.A.*, 2014 WL 5512088, at *4 (E.D. Mich. Oct. 31, 2014).

### B.   Plaintiffs' Fraud Claims

In Count I, plaintiffs allege that defendant made false representations in order to induce plaintiffs to sit on their rights so that a Sheriff's sale could be completed without incident. (Dkt. 1-2, Compl. ¶¶ 44-48). Specifically, plaintiffs allege that defendant made the following false representations: (1) that no one from Chase had spoken with anyone from the Program regarding reinstatement funding; and (2) that Program funding had been denied because the Property had been sold at Sheriff's sale. (*Id.* ¶¶ 44-45). In the alternative, plaintiffs allege in Count II that these same representations constituted "constructive fraud" without a purposeful design to defraud plaintiff. (*Id.* ¶¶ 52-56).

9

As explained above, under Michigan law, "[a]fter the statutory redemption period has expired, courts may examine a plaintiff's effort to set aside the foreclosure sale only where such a plaintiff has made 'a clear showing of fraud, or irregularity' that relates to '*the foreclosure procedure itself*.'" *Elsheick*, 566 Fed. Appx. at 497 (emphasis added, citation omitted); *Conlin*, 714 F.3d at 360-61 (the alleged fraud or irregularity must relate to the foreclosure sale proceedings themselves and not underlying equities). Defendant claims that plaintiffs have failed to demonstrate a clear showing of fraud or irregularity in the foreclosure process sufficient to justify setting aside the Sheriff's sale, noting that plaintiff does not allege any prejudicial material fraud or irregularity in the Sheriff's sale procedure. (Dkt. 5).

To state a claim for fraud, plaintiffs must allege that defendant: (1) made a material misrepresentation; (2) the representation was false; (3) when defendant made the representation, it knew that the representation was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) defendant made the representation with the intention that the plaintiffs would act upon it; (5) plaintiffs acted in reliance upon it; and (6) plaintiffs suffered damage. *M & D, Inc. v. W.B. McConkey,* 231 Mich. App. 22, 26–27; 585 N.W.2d 33 (1988). A review of plaintiffs' complaint shows that defendant is correct that plaintiffs' complaint does not allege any fraud or irregularity in the foreclosure sale itself. Indeed,

10

plaintiff's complaint does not focus on the Sheriff's sale, but instead focuses on reinstatement funding.  Plaintiffs contend that they were approved for Program funding in August 2013 and that defendant refused to accept those funds.  Even accepting as true all factual allegations in plaintiffs' Complaint, the plaintiffs have failed to sufficiently articulate a claim of fraud or irregularity in the foreclosure procedure sufficient to survive a motion to dismiss, as there are no allegations of an irregularity *in the foreclosure process itself* (such as inadequate notice or an invalid assignment).  *See Ross v. Federal Nat'l Mortg. Ass'n*, 2014 WL 3597633, at *5 (E.D. Mich. July 22, 2014) (plaintiff's allegations regarding defendant's refusal to accept Program funds do not assert "fraud or irregularity in 'the legal measures' of the foreclosure process") (collecting cases).

Courts in this district have consistently held that failure to comply with the loan modification statute is not an "irregularity" sufficient to set aside a foreclosure sale.  *See e.g.*, *Holliday v. Wells Fargo Bank, NA*, 2013 WL 3880211, at *4 (E.D. Mich. July 26, 2013) (collecting cases finding that the plaintiff failed to sufficiently allege "fraud or irregularity" based on alleged failure to comply with the loan modification statute), *aff'd*, 569 Fed. Appx. 366 (6th Cir. 2014); *see also Williams v. Pledged Prop. II, LLC*, 508 Fed. Appx. 465, 468 (6th Cir. 2012) ("Despite the fact that the [loan modification] negotiations may have taken place during the foreclosure process, these negotiations remained separate from the

11

foreclosure process itself.") (internal citations omitted), *cert. denied*, 134 S. Ct. 98 (2013); *Shamoun v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 2237906, at *4 (E.D. Mich. May 21, 2013) (holding allegation that plaintiff was in the process of negotiating a loan modification when the defendant foreclosed did not "constitute an irregularity sufficient to set aside the foreclosure sale").  It is well settled that "a breach of the loan modification statutes does not preclude [a] bank from foreclosing.  Rather, it gives the plaintiff an option to convert a foreclosure by advertisement to a judicial foreclosure.  *Thus, a violation of the loan modification statute, standing alone, is not enough to show fraud or irregularity under Kim*."  *Archeampong v. Bank of New York Mellon*, 2013 WL 173472, at *7-8 (E.D. Mich. Jan. 16, 2013) (emphasis added), *aff'd*, 531 Fed. Appx. 751 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 2297 (2014).

Moreover, it is does not appear that plaintiffs' pleadings are sufficient as a matter of law to state a claim for fraud against defendant.  It is well-settled that in order for a plaintiff to state a claim for fraud, plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and "must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied," *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984), as well as the identity of the person who made the alleged misrepresentation. *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992); *see*

12

*also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) ("[I]nterpret[ing]

Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the

alleged misrepresentation on which he or she relied; the fraudulent scheme; the

fraudulent intent of the defendants; and the injury resulting from the fraud.").

"The bar for pleading fraud to set aside a foreclosure sale is extremely high." *See*

*Colbert v. Federal Nat'l Mortg. Ass'n*, 2013 WL 1629305, at *11 (E.D. Mich.

Apr. 16, 2013) (citations omitted).  Further, "an action for fraudulent

misrepresentation must be predicated upon a statement relating to a past or an

existing fact." *Ross*, 2014 WL 3597633, at *7 (citations omitted).

Here, plaintiffs' complaint is devoid of allegations of who at defendant

Chase made the alleged false representations, the time, place and content of the

alleged statements, and how they relied on these statements to their detriment. *See*

*Ross*, 2014 WL 3597633, at *8.  Plaintiffs' complaint alleges that they received

confirmation from the Program in August 2013 "that they *would be* approved for

financing that would allow them to reinstate their mortgage," that they continued

to forward requested documents to the Program through September and October

2013, that they received notice of the foreclosure sale on November 21, 2013, and

that they were "essentially asked . . . to re-submit their Program application" on

December 11, 2013.  (Dkt. 1-2, Compl. ¶¶ 26-34).  Thus, taking plaintiff's

allegations as true, they do not support a finding that plaintiffs had indeed received

approval of Program funds, but at most were advised that they *would be* approved. Plaintiffs further allege that an unidentified counselor with the Program said that an unidentified Program supervisor had spoken with a Chase representative (*id.* ¶ 41), but fails to identify when that conversation took place, with whom, and the content of that conversation. These allegations are insufficient to support a claim for fraud.

### C.   Plaintiffs' Fail to Establish Prejudice

As explained above, even if plaintiffs pled fraud or irregularity in the foreclosure process itself, any such defect would have rendered the foreclosure voidable, not void, and plaintiffs would still have to show that they were prejudiced by the failure to comply with the statute, i.e. that they would have been in a better position to preserve their interest in the Property absent defendant's noncompliance with the statute. *See Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115-16; 825 N.W.2d 329 (2012). "Federal case law had consistently held that where plaintiffs have admitted default, received notice of default, failed to show they had the funds to outbid the highest bidder at the sale, let alone pay the entire unpaid balance owing on the loan, and showed no attempt to redeem the property, they cannot show how any alleged defects in the notice prejudiced them." *Slezak v. Nationstar Mortg., LLC*, 2013 WL 5348631, at *5 (E.D. Mich. Sept. 24, 2013) (collecting cases). Rather, plaintiffs must show prejudice such as

14

double liability (*i.e.*, paying the wrong bank or paying a mortgage payment twice).

*See Conlin*, 714 F.3d at 359-60 ("Post-Kim, Michigan mortgagors seeking to set

aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g.,

double liability)[.]"; *Carmack v. Bank of N.Y. Mellon*, 534 Fed. Appx. 508 (6th

Cir. 2013) ("A borrower . . . must establish prejudice (such as double liability)

resulting from the foreclosing party's failure to adhere to the statute's

requirements.").

Plaintiffs argue they were prejudiced because they were approved for funds

through the Program that would allow them to reinstate their mortgage loan, and

but now lost title to the Property.  Plaintiffs further assert that a decision regarding

their application for a loan modification was never communicated to them.  This is

not the type of prejudice sufficient to set aside a foreclosure sale.  As defendant

asserts, losing title to the Property is not sufficient prejudice, and is exactly the

outcome intended upon failure to meet the mortgage requirements.  *See e.g.,*

*Grayer v. JPMorgan Chase Bank Nat'l Ass'n*, 2013 WL 4414867 (E.D. Mich.

Aug. 15, 2013) (plaintiff's allegations that they will lose their rights to the

property "is not the type of prejudice *Kim* contemplates as this is precisely the

result intended by Michigan's foreclosure by advertisement statute" and "Plaintiffs

do not dispute defaulting on their obligations under the Note nor do they allege

any effort to redeem the Property").  Moreover, even assuming that defendant

15

violated the loan modification statute by initiating foreclosure proceedings pending a decision on plaintiff's application to modify the Loan, plaintiffs' only available remedy under Michigan law was conversion of the foreclosure by advertisement to a judicial foreclosure prior to the Sheriff's sale, which they did not do. *See Elsheick*, 566 Fed. Appx. at 499 ("Subsection (8) of the MCL § 600.3205c identifies the exclusive remedy for a defendant's failure to comply with the loan modification process outlined in Michigan statutes. That subsection provides, '[i]f a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated *to convert the foreclosure proceeding to a judicial foreclosure*.'").

### D.    Statute of Frauds

Defendant also argues that plaintiffs' claims are barred by the statute of frauds. Defendant asserts that the gravamen of plaintiffs' complaint is that defendant made representations regarding reinstatement or funding from Michigan's Hardest Hit Program, and that these claims are barred as a matter of law because plaintiffs did not allege that defendant signed a writing memorializing these alleged representations. Plaintiffs respond that their claims are not barred by the statute of frauds because they were simply trying to reinstate their mortgage loan and were not seeking a "financial accommodation." Plaintiffs further contend

16

that, if the proposed reinstatement was a financial accommodation, defendant's participation in the Program, and execution of a Service Participation Agreement ("SPA"), would necessarily include an authorized signature allowing for the same.

The Michigan Statute of Frauds bars claims against a financial institution in the absence of a signed writing to enforce a promise to "renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, *or any other financial accommodation*."  *See* MCL § 566.132(2) (emphasis added, providing, in relevant part, that an action cannot be brought against a financial institution to enforce any kind of "financial accommodation," unless that promise or commitment "is in writing and signed with an authorized signature by the financial institution").  Because of the sweeping reach of the statute, any claim, regardless of how it is labeled, "against a financial institution to enforce the terms of an oral promise" is barred.  *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538; 619 N.W.2d 66 (2000); *see also Barclae v. Zarb*, 300 Mich. App. 455, 469; 834 N.W.2d 100 (2013) (noting that "the Michigan Court of Appeals has clearly interpreted M.C.L. 566.132(2) to include promises to delay foreclosure sales, holding that 'an agreement to delay a foreclosure sale is an agreement to make a "financial accommodation.").

Plaintiffs' claims here are all anchored in their alleged approval for Program funding, a form of loan modification.  But, plaintiffs have not alleged that the

17

approval was in writing.  Consequently, their claims are barred by the statute of frauds.  *See Ross*, 2014 WL 3597633, at *6 (holding that plaintiff's fraudulent misrepresentation, estoppel and negligence claims were barred by the statute of frauds because they "are all anchored, at least in part, in her alleged approval for a loan modification").  As the *Ross* court explained, "[s]uch claims would force the Court to 'acknowledge the existence and breach of an oral promise' made by Defendants," and "[t]herefore, she cannot bring an action to enforce it."  *Id*.

Plaintiffs' argue that they are entitled to rely on the SPA as a basis to satisfy the statute of frauds requirements, but plaintiffs are not a party to the SPA, nor are they third-party beneficiaries, and therefore cannot rely on it to supply the signed writing requirement of the statute of frauds.  *See Ross*, 2014 WL 3597633, at *12-13(Under Michigan's Hardest Hit Program, like the analogous HAMP, loan servicers can enter into agreements with the government that may require them to perform certain loan modification and foreclosure prevention services but borrowers are not a third-party beneficiary of such agreements.)

### E.     Plaintiffs' MRCPA Claim

Plaintiffs alleged that defendants violated the Michigan Regulation of Collection Practices Act, M.C.L. § 445.251, *et seq*. ("MRCPA"). (Dkt. 1-2, Compl., Count III).  The MRCPA prohibits misrepresentations and misleading communications by a "regulated person" in connection with the collection of a

18

debt or a claim. M.C.L. § 445.252.  A borrower, however, has a private right of
action only to seek actual damages, or to obtain civil fines in the event of a
"willful violation." M.C.L. § 445.257.  Defendant asserts that plaintiffs do not
plead any facts identifying precisely what communications made by Chase were
misleading or deceptive, how any such unspecified communications were
misleading or deceptive, or how any such unspecified communications were a
willful violation of the MRCPA, and do not plead any facts supporting the
existence of any actual damages, which precludes any recovery for any inadvertent
violations of the MRCPA.  *See* MCL § 445.257(1).

Plaintiffs respond that defendant has committed a "willful" violation under
the MRCPA because defendant lied about the fact that it had not received any of
plaintiffs' documentation relating to reinstatement funds from Michigan's Hardest
Hit Program, or, at most, simply sat on its knowledge of plaintiffs' approval for
Program funding and allowed their Property to be sold a Sheriff's sale.  Plaintiffs
also assert they have suffered actual damages in that they lost their house and will
have to pay for alternative housing, pay to move, and suffered mental and
emotional damages.

In *Bodner v. Wells Fargo Bank, N.A.*, 2014 WL 5512088 (E.D. Mich. Oct.
31, 2014), plaintiff similarly alleged that the defendant communicated with her in
a "misleading or deceptive manner," made "an inaccurate, misleading, untrue, or

19

deceptive statement in trying to collect a debt," misrepresented that "status of legal action being taken," and the court found that plaintiff was relying on "bald labels and conclusions, and a formulaic recitation of the elements of the cause of action," without "explain[ing] which statement or statements by Defendant were misleading, which statement or statements were untrue, or how Defendant misrepresented the status of any 'legal action,'" and thus failed to adequately plead this Count. *Id.* at *6. Similarly, here, plaintiffs failed to adequately plead this Count, but instead simply assert legal conclusions devoid of sufficient factual matter to state a claim of relief that is plausible on its face. *Id* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### F.   Negligent Administration of the Loan

Plaintiffs allege in Count IV of their Complaint that defendant was "negligent in the monitoring, supervision and/or administration of the mortgage loan at issue, including but not limited to Defendant's actions during the pre-sale negotiation process." (Dkt. 1-2, Compl. ¶ 66).

Defendants assert that Michigan precludes tort claims where there is no independent breach of duty "separate and distinct" from the alleged contractual obligations. *Fultz v. Union-Commerce Assoc.,* 470 Mich. 460, 467; 683 N.W.2d 587 (2004) ("[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.

If no independent duty exists, no tort action based on contract will lie."). Defendant argues that here, plaintiffs' claims for "negligence" stem from  their allegations that defendant improperly "monitor[ed], supervis[ed], and administer[ed]" the mortgage loan pursuant to the terms of the parties' loan contract (Dkt. 1-2, Compl. ¶¶65-66), and that plaintiffs' factual allegations do not provide a basis for a separate action in tort, and do nothing but recharacterize the alleged contractual obligations concerning the Loan as "negligence."  Defendant concludes that any alleged duties that it owed plaintiffs necessarily arose from the Mortgage, and therefore, plaintiffs' claims regarding an alleged breach of duty must fail and Count IV should be dismissed.

Plaintiffs respond that defendant owes plaintiffs a duty to accept their reinstatement funds both through their mortgage loan contract with plaintiffs and defendant's status as a financial institution who accepts reinstatement funds from Michigan's Hardest Hit Program.

Plaintiffs' allegations that defendant breached a duty owed to them pursuant to the mortgage loan contract cannot establish a separate and independent duty to support a negligence claim as a matter of law.  *See Fultz,* 470 Mich. at 467. Plaintiffs' complaint does not allege that defendant breached any duties under the SPA (as plaintiffs allege in their response), and thus such allegations do not defeat defendant's motion to dismiss.  Moreover, because plaintiffs are not a party to the

SPA, nor a third party beneficiary, the contractual duties under that agreement cannot support plaintiffs' negligence claim against defendant.   *See Ross*, 2014 WL 3597633, at *12-13.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion to dismiss be **GRANTED** and this cause of action be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

22

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 21, 2015                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on April 21, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov